UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT TAECKENS and MARY SHAVER,<br><br>Plaintiffs,<br><br>v.<br><br>SCHWEITZER OPERATIONS INC. d/b/a SCHWEITZER MOUNTAIN RESORT and/or SCHWEITZER MOUNTAIN and/or SCHWEITZER, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-00417-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are a variety of motions related to discovery and scheduling. The Court's holding as to each motion is outlined below.[1]

## II. BACKGROUND

### A. Factual

This is a personal injury case. Plaintiff Robert Taeckens was injured on August 31, 2024, while attempting to board the Great Escape chairlift at the Schweitzer Mountain Resort in Sandpoint, Idaho, which is operated by Defendant.[2] The chairlift hit Taeckens on

---

[1] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

[2] Although Defendant is comprised of various legal entities, the parties refer to them all as the singular "Defendant." The Court will do likewise.

the back of the legs, causing him to fall forward and off the loading platform. Unfortunately, Taeckens broke his spinal cord upon impact. He is now a quadriplegic requiring constant care and will be on a ventilator for the rest of his life.

### B. Procedural[3]

Taeckens and his wife filed this action on September 10, 2024, asserting two causes of action: negligence/negligence per se and loss of consortium. Dkt. 1.

Roughly one year into discovery, Plaintiffs' counsel contacted the Court to initiate the Court's informal discovery dispute process based upon Defendant's purported failure to meaningfully respond to their requests. The mediation was amicable, and Defendant represented it would file responses forthwith. Plaintiffs were not satisfied with the responses and filed a Motion to Compel. Dkt. 22. Defendant opposes the Motion. Dkt. 24.

Around this same time, and—at least in part—due to Defendant's evasive discovery responses, Plaintiffs moved the Court to amend their complaint to add a negligence per se claim out of an abundance of caution. Dkt. 23. Defendant opposes the Motion. Dkt. 25.

A few months later, Plaintiffs filed a second Motion to Compel—again, after having completed the Court's informal process *and* after receiving assurances from Defendant that discovery responses were forthcoming. Dkt. 34. Defendant opposes the Motion. Dkt. 40.

Plaintiffs also moved to amend their complaint again, this time to add new parties who they suspected to be parent companies and/or shell companies to the existing Defendant. Dkt. 35. Defendant opposes the motion. Dkt. 41.

---

[3] Motion-specific background will be provided below; however, a broad overview it helpful for context.

Plaintiff then filed a Motion for Partial Summary Judgment (Dkt. 42) and Motion to Take Judicial Notice (Dkt. 43).

That same day, Defendant filed a Motion to Amend the Scheduling Order. Dkt. 44. Defendant noted there were multiple pending motions before the Court and an extension of the discovery cutoff and dispositive motion deadline was warranted. Plaintiffs oppose amending the schedule. Dkt. 46.

The next day, Defendant changed counsel. Dkt. 45. Considering this change, Plaintiffs afforded new counsel certain extensions to briefing deadlines—specifically to Plaintiffs' Motion for Partial Summary Judgment. *See, e.g.*, Dkt. 50. Defendant then went a step further requesting a longer extension (Dkt. 52) which Plaintiffs opposed (Dkt. 54). The Court granted Defendant's request for an extension and noted a more fulsome analysis of its reasoning would be forthcoming. Dkt. 56.

The Court will now address each motion, in turn.

### III. DISCUSSION

#### A. Motion to Compel (Dkt. 22)

*1. Background*

Plaintiffs served their First Set of Interrogatories and Second Set of Requests for Production on Defendant on July 25, 2025. Under the Federal Rules of Civil Procedure, Defendant had to respond within 30 days, by August 25, 2025. Defendant did not respond or object to any requests, nor did it request an extension of the deadline.

Plaintiffs then *repeatedly* asked when they would be receiving responses and requested a time to meet and confer. Plaintiffs did so via a formal letter on August 29,

MEMORANDUM DECISION AND ORDER - 3

2025, and through a follow-up email on September 5, 2025. On September 9, 2025, Defendant responded, offering to meet and confer on September 11, 2025. Ten minutes before the agreed-upon time, Defendant emailed Plaintiffs requesting to postpone the meet and confer to the next day. Plaintiffs agreed.

The next day, Defendant sent a formal letter one minute before the scheduled call and, among other things, stated it had not responded due to a calendaring error and promised that it would "produce complete answers and responses by September 19, 2025"—a promise that was echoed on the call. Plaintiffs did not agree to this unilateral extension of deadlines, but nonetheless patiently waited in the spirit of cooperation. Yet, the next week, Defendant again failed to meet its (now self-imposed) deadline.

Having been repeatedly stonewalled by Defendant, Plaintiffs contacted the Court and requested a discovery mediation with the Court's law clerk. Notably, although the law clerk requested that each party submit their position statements the day before the mediation, Defendant did not provide its statement until 36 minutes before the scheduled call. During the mediation, Defendant committed to provide complete responses to Plaintiffs' discovery requests by October 8, 2025.

On October 8, 2025, 76 days after the date on which Plaintiffs first served their requests, Defendant finally served its responses. However, Plaintiffs deemed the majority of Defendant's responses to be improper, evasive, and/or incomplete.

Plaintiffs sent a final letter to Defendant on October 17, 2025, outlining the deficiencies they had identified in Defendant's responses and asked Defendant to, among

MEMORANDUM DECISION AND ORDER - 4

other things, address each of Plaintiffs' stated issues and remedy its flawed discovery responses. Defendant did not respond, so Plaintiffs filed the instant Motion.

### 2. Legal Standard

Discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id*. A party may move for an order compelling a discovery response pursuant to Federal Rule of Civil Procedure 37(a)(3)(B).

Under Federal Rule of Civil Procedure 37, a party may move to compel discovery responses if, among other things, an opposing party fails to answer interrogatories or produce requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). "While the moving party must make a threshold showing of relevance . . . the party resisting discovery carries the 'heavy burden' of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper." *Strojnik v. Block 22 LLC*, 2019 WL 6315523, at *2 (D. Idaho Nov. 25, 2019) (citation modified).

### 3. Analysis

Simply put, obtaining discovery from Defendant in this case has been like "pulling teeth."[4] As outlined above, Plaintiffs afforded Defendant *numerous* extensions and

---

[4] The Court is loath to criticize attorneys in written orders. The Court is familiar with Defendant's prior counsel and has always found her to be very capable and professional. This case has been an anomaly to say the least. And while the Court *could* suppose the discovery failures here are more appropriately directed at the client as opposed to counsel, such a supposition would not account for Defense counsel's extremely tardy submission to the Court's law clerk prior to the scheduled informal mediation *and* the fact that almost

(Continued)

opportunities to respond. When Defendant did eventually respond, it largely objected to Plaintiffs' requests or provided vague, unverified responses.

The Court has reviewed the parties' briefs, the underlying discovery requests, and Defendant's responses. For the following two reasons, Plaintiffs' Motion is GRANTED.[5]

First, Defendant objected to many of Plaintiffs' requests. Such was improper. By failing to timely respond to Plaintiffs' discovery, Defendant waived its rights to object.

Unless otherwise agreed, a party must serve their responses and any objections to RFPs promulgated during discovery within thirty days after their service. Fed. R. Civ. P. 34(b)(2)(A). Generally, "a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

Notably, Rule 33, which also provides a thirty-day timeframe for a party to serve their answers and any objections to interrogatories (Fed. R. Civ. P. 33(b)(2)), allows courts to excuse a party's failure to timely assert objections "for good cause." Fed. R. Civ. P. 33(b)(4). Rule 34 does not contain an analogous "good cause" exception. However, the Ninth Circuit has been reluctant to interpret Rule 34 as imposing an automatic waiver penalty for untimely discovery responses. *Cf. Burlington N. & Santa Fe Ry. Co. v. U.S.*

---

ever single one of Defendant's response briefs to Plaintiffs' motions were filed after the deadline as well. The Court does not know if this situation is the result of an overworked attorney, an unresponsive client, or something else entirely. However, the situation should not have got to the point it did.

[5] As a threshold matter, Defendant suggests Plaintiffs' Motion to Compel should be denied outright because they failed to meet and confer before filing the Motion. In fact, the bulk of Defendant's response brief is dedicated to this concept. Dkt. 24, at 7–13. But this is entirely incorrect. As outlined above, Plaintiff worked with Defendant for months. The Court was also involved. There was no reason for Plaintiff to meet and confer again and their motion was not procedurally improper.

*Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (rejecting a "per se waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit.").

Many courts have found "there is no reason to treat waiver under Rule 34 any different than Rule 33." *See, e.g., Apple Hill Growers v. El Dorado Orchards, Inc.*, 2022 WL 1506205, at *12 (E.D. Cal. May 12, 2022) (citation modified). Thus, most courts have applied a broad "good cause" standard in both instances.

On the current record, the Court finds Defendant has not provided any good cause for its failure to timely respond to Plaintiff's First Set of Interrogatories and Second Set of Requests for Production. It blew through the initial deadline (and multiple re-set deadlines), and provided little excuse, if any, for its repeated failures. Accordingly, Defendant must withdraw all objections, specify whether it has withheld any documents or information subject to those objections, provide satisfactory responses to Plaintiffs' areas of inquiry, and produce any documents or information it has withheld based on its objections.

Second, Defendant did not substantively respond to Plaintiffs' Motion to Compel or suggest why its responses were adequate.[6] The sole exception was a discussion about certain privileged emails. These emails were the subject of some discussion during the Court's informal conference. In short, Defendant redacted several emails regarding Taeckens' fall citing the work product doctrine and the idea that these emails were trial preparation materials. But the emails in question were exchanged between Tom Chasse,

---

[6] As noted, *see* footnote 5, the bulk of Defendant's response focused on procedural arguments.

MEMORANDUM DECISION AND ORDER - 7

Schweitzer's President, and Andrew Lynch, "VP, Risk Management and Insurance" for Alterra Mountain Company, on September 5, 2024, a mere five days after Taeckens' fall and long before any litigation was filed. Although Chasse or Lynch may have (correctly) thought litigation was forthcoming, that alone is not sufficient to shield their communications. *See Dewitt v. Walgreen Co.,* 2012 WL 3837764, at *5 (D. Idaho Sept. 4, 2012) ("The work product rule does not come into play merely because there is a remote prospect of future litigation."). These emails are not protected and must be turned over.

In sum, Plaintiffs' Motion to Compel (Dkt. 22) is GRANTED. Defendant must withdraw its objections and substantively respond to those requests identified in Plaintiffs' Motion—including those related to the aforementioned emails.

Lastly, Plaintiffs ask the Court to award their attorneys' fees in bringing the instant motion. Defendant half-heartedly objects based upon, again, Plaintiffs' failure to meet and confer. The Court has already rejected Defendant's meet and confer argument.

"When a motion to compel has been granted, the Court must . . . require the party whose conduct resulted in the motion, or attorney advising the conduct, or both, to pay the reasonable attorneys' fees of the movant. *Manley v. Winsupply Inc.*, 2023 WL 7164564, at *1 (D. Idaho Oct. 30, 2023) (citing Fed. R. Civ. P. 37(a)(5)(A)). "Awarding attorneys' fees is mandatory under this rule unless the moving party filed the motion before making a good faith effort to obtain disclosure without court intervention, the nondisclosure was substantially justified, or other circumstances make the award of fees unjust." *Id*. (citing Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii)).

MEMORANDUM DECISION AND ORDER - 8

Plaintiffs made substantial efforts to resolve the discovery issues without Court intervention. Defendant repeatedly flouted the Federal Rules and stonewalled Plaintiffs without justification. Accordingly, Plaintiffs are awarded their attorneys' fees incurred in bringing this motion. Plaintiffs shall file appropriate documentation for the Court to calculate the amount of the award.[7]

## B. Motion to Amend (Dkt. 23)

### 1. Background

As noted, Plaintiffs two causes of action when they originally filed this suit were: negligence/negligence per se and loss of consortium. Dkt. 1. Plaintiffs' negligence per se theory as originally pled was based upon Schweitzer's duty to construct, operate, maintain, and repair its chairlift in accordance with the American National Standards Institute's safety requirements for aerial passenger tramways.

During discovery, Plaintiffs received varying, and sometimes conflicting, responses from Defendant about the chairlift, its design, and any modifications that have occurred over the years. Ultimately, Plaintiffs determined Defendant may have violated other applicable building codes when they made these modifications and now seeks to amend their complaint to more clearly allege such a theory under their negligence per se claim. *See generally* Dkt. 23. Defendant opposes the Motion. Dkt. 25.

---

[7] Plaintiffs need not brief the fees issue; the Court has found fees are warranted. Plaintiffs need only include a summary of its counsel's hourly rates and the hours expended on this motion. In like manner, Defendant cannot object to the imposition of fees. It can, however, object to the hours expended and hourly rate if it so chooses.

MEMORANDUM DECISION AND ORDER - 9

### 2. *Legal Standard*

When the Court's deadline for amending pleadings and joining parties has passed, a party seeking leave to amend his complaint must show "good cause" for amendment pursuant to Federal Rule of Civil Procedure 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking amendment. *Id.* at 609. Although prejudice to the opposing party may also be considered, the focus of the inquiry is on the movant's reason for seeking amendment. *Id.* "If that party was not diligent, the inquiry should end." *Id.*

If a party seeking amendment establishes good cause pursuant to Rule 16(b), that party must then demonstrate that amendment is proper under Rule 15(a). *Id.* at 608. Rule 15(a)'s liberal amendment policy focuses on prejudice to the opposing party and the bad faith, if any, of the party seeking leave to amend. *Id.* at 609; *Barden v. Goodsell,* 2022 WL 11734742, at *3 (D. Idaho 2022). Rule 15(a)'s policy—which requires courts to grant leave to amend "freely" as justice so requires—must be applied "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The purpose of Rule 15 is to facilitate a decision on the merits, rather than on the pleadings or technicalities. *Stanton v. Battelle Energy Alliance, LLC.,* 83 F. Supp. 3d 937, 948 (D. Idaho 2015). The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) is in the sole discretion of the trial court. *Id.* at 949.

The Court considers five factors under Rule 15 when determining whether leave to amend should be granted: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party,

MEMORANDUM DECISION AND ORDER - 10

(4) futility of amendment, and (5) whether plaintiff has previously amended his complaint.[8]

*In re W. State Wholesale Nat. Gas Antitrust Litig.,* 715 F.3d 716, 738 (9th Cir. 2013).

### 3. Analysis

As Plaintiffs correctly note, Dkt. 23-1, at 11–12, they are not *required* to amend their complaint to pursue this alternate theory. In fact, they do not even have to plead negligence per se in the first instance because they have pleaded straight negligence. *See Obendorf v. Terra Hug Spray Co.*, 188 P.3d 834, 840 (Idaho 2008) ("a party is not required to separately plead negligence per se as a theory distinct from ordinary negligence."). Nevertheless, Plaintiffs seek to amend their complaint out of an abundance of caution, so their full theory of the case is clear. The Court finds there is good cause to do so for the reasons explained below.

On the one hand, Plaintiffs do not present an overly compelling case for leave to amend because, as they admit, amendment is not actually necessary. But by the same token, because amendment is not entirely necessary, it can hardly be said allowing the same will be particularly prejudicial to Defendant.

Most factors weigh in favor of Plaintiffs. They have not previously amended their complaint. No bad faith or undue delay appears present as Plaintiffs moved to amend as soon as they became aware of the issue. And, as noted, there is little prejudice to Defendant.

The final factor is whether the amendment is futile. Again, somewhat oddly, while

---

[8] Some courts do not include prior amendment of the complaint as a factor, making four factors to consider. *See, e.g., DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Lemar v. CVS Pharmacy, Inc.*, 2014 WL 12725107 (C.D. Cal. 2014).

recognizing Plaintiffs do not actually need to amend their complaint to pursue this theory, Defendant nevertheless suggests the amendment would be futile. It postures Plaintiffs have not identified what building code it supposedly violated nor how any provision of that code could have prevented Taeckens' injury. In response, Plaintiffs highlight the relatively low pleading standard and that they cannot be more specific because Defendant has not provided substantive discovery that would allow them to know when any repairs or modifications were made, and which version of the Idaho Building Code (or other relative codes) were in effect. That said, this argument is now somewhat outdated as Plaintiffs have filed a motion for partial summary judgment on this claim and have, as part of that motion, identified certain code sections they believe Defendant violated. Suffice it to say, the amendment does not appear futile.

The Court will discuss Plaintiffs' Motion for Partial Summary Judgment in greater detail below. As for this motion, however, the Court finds Plaintiffs have met their burden to amend and include this alternate negligence per se theory. The Motion is GRANTED.

### C. Motion to Compel (Dkt. 34)

#### 1. Background

Plaintiffs served their Second Set of Interrogatories and Third Set of Requests for Production on September 24, 2025. Those requests seek information regarding what modifications Defendant made to the chairlift and loading platform, when those modifications were made, and whether permits or approvals were obtained.

In response, Defendant asserted boilerplate objections claiming the term "modification" is vague and that the requests were overly broad. Defendant then refused

MEMORANDUM DECISION AND ORDER - 12

to answer the interrogatories at all, stating it would provide a response only after further meet-and-confer discussions about the meaning of "modification." Defendant similarly refused to produce corresponding responsive documents.

As before, Plaintiffs made repeatedly attempted to resolve these issues without the Court's intervention. Even after Plaintiffs narrowed and clarified their requests, Defendant ignored follow-up written meet-and-confer letters, promised, then failed, to provide discovery responses by the end of 2025, and later agreed in writing, then again failed, to provide verified responses by January 28, 2026.

Plaintiffs were, again, forced to seek the Court's assistance, but to no avail. Despite talking the situation over with the Court's law clerk and, generally speaking, coming to a reasonable resolution—in which Defendant represented it would provide substantive responses—it still has not done so.

Thus, Plaintiffs filed this second Motion to Compel.

2. *Legal Standard*

The legal standard is the same as above and will not be repeated here.

3. *Analysis*

Defendant explains it took it longer than expected to review the materials in question and reiterate their primary objection that Plaintiffs' requests are simply too broad—spanning the last 35 years and seeking all "modifications" without more clarifying language on what qualifies as a modification.

It is understandable that Defendant might have needed longer than 30 days to prepare adequate responses. Sometimes it takes longer than initially anticipated to review

MEMORANDUM DECISION AND ORDER - 13

discovery. But again, that does not excuse Defendant's failure to engage with Plaintiffs in the process. Nor does it excuse Defendant from fulfilling its promise to provide responses—even if those promises were informally between counsel *or* informally in front of the Court's law clerk. If more time was needed, Defendant should have asked instead of ignoring the deadlines. In law, if not always in life, it is better to ask permission than forgiveness.

Next, Defendant raises an overbreadth challenge. While the requests may be somewhat broad, that is not necessarily a problem. Plaintiffs seek to understand when, whether, and how the chairlift was serviced, what modifications (if any) were made, and whether all permitting was appropriately obtained. While potentially broad, these requests are all relevant and discoverable based on the claims at issue in this case. More importantly, however, Plaintiffs tried to work with Defendant to alleviate its concerns. Plaintiffs repeatedly clarified the scope of the requests, identified specific examples of relevant modifications, and explained why that information was relevant, including through a detailed meet-and-confer letter. Plaintiffs also offered to narrow both the scope and timeframe of the requests further if Defendant could provide some foundational information so Plaintiffs could make those limitations. Ultimately, however, Defendant refused to engage in that process.

The Court has reviewed the briefs, Plaintiffs' underlying discovery requests, and Defendant's responses and finds Plaintiffs Motion is well taken. Plaintiffs' Motion to Compel (Dkt. 34) is GRANTED. Defendant must provide complete interrogatory

MEMORANDUM DECISION AND ORDER - 14

responses regarding modifications and must update its answers to Plaintiffs' third set of requests for production regarding permitting.

Plaintiffs again seek their fees in bringing this Motion. Dkt. 34, at 12–13. Defendant objects, again, arguing their refusal was justified based on Plaintiffs' broad terminology. Defendant's response here is a bit more meaningful than before. However, the result is no different. This is not a situation where Plaintiffs rushed to the Court without giving Defendant a meaningful opportunity to respond or propounded excessive discovery requests to Defendant's prejudice. As explained above, Plaintiffs narrowed their requests on multiple occasions and made concessions as a starting point to engage Defendant. They waited, engaged with the Court, and were justified in resorting to another motion. Defendant's delays and non-responsiveness is not justifiable. Fees are, therefore, appropriately granted as to this motion as well.

As outlined above, Plaintiffs shall file their appropriate documentation to which Defendant may object.

### D. Motion to Amend (Dkt. 35)

#### 1. Background

Discovery in this case has been contentious and protracted to say the least. In response to Plaintiffs' requests, Defendant served deeds and mortgages indicating its sister entity, Husky Mountain, owned the land on which the chairlift and its loading platform were located, along with the chairlift itself. It also served documents indicating Husky Mountain applied for and owned the state-issued alcohol beverage license for the Resort

MEMORANDUM DECISION AND ORDER - 15

and in that application, Husky Mountain indicated it was operating as "Schweitzer Mountain Resort."

Confusingly, however, "Schweitzer Mountain Resort" is an assumed business name held by Schweitzer Operations, not Husky Mountain. Alterra Mountain Company U.S. Inc., and Alterra Mountain Company are the parent companies of Husky Mountain and the other Schweitzer entities.

Based upon this confusion, Plaintiffs moved to amend their Complaint to add Husky Mountain Acquisition Inc., Alterra Mountain Company U.S. Inc., and Alterra Mountain Company as Defendants based upon alter ego theories of liability.

*2. Legal Standard*

As outlined above, the Court must first find good cause to allow amendment under Rule 16 and then, under Rule 15, consider the following five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint. *See In re W. State Wholesale Nat. Gas Antitrust Litig.,* 715 at 738.

*3. Analysis*

Defendant objects to amendment on two bases. First, it alleges Plaintiffs were dilatory in bringing this motion. Second, it alleges it will be significantly prejudiced if more parties are added to the point this case will essentially have to "re-start." Dkt. 41, at 13. Defendant's concerns are overblown.

By all accounts, Plaintiffs did not discover the identities of these related entities until more recently. The Court finds Plaintiffs moved to amend with relative speed and

MEMORANDUM DECISION AND ORDER - 16

there was good cause to do so even considering the deadline has passed.

Turning to prejudice and the existing schedule, as will be discussed next, Defendant itself has moved to extend the deadlines in this case. Thus, any additional discovery will not unduly extend this case. Moreover, Plaintiffs have represented the discovery they will need from these entities is discrete and related to ownership, operational control, and the relationship between each entity.

Finally, Plaintiffs note they could file another lawsuit and move to consolidate that action with this one if the Court does not believe amendment is proper. Dkt. 35-1, at 15–16. Defendant's response: "let them." Dkt. 41, at 16. Such a course of action is unnecessary. In fact, it would strain the judicial resources in an already overburdened district to follow such a plan when a relatively straightforward option is available here.

Ultimately, the Court finds allowing this limited amendment will not unduly prejudice Defendant and will be more economical in the long run.

Accordingly, Plaintiffs' Motion to Amend is GRANTED. Plaintiffs shall file an Amended Complaint that includes these Defendants—*and* its negligence per se theory based on building codes—within three business days of the date of this decision.

### E. Motion to Amend (Dkt. 44)

#### 1. Background

Following various modifications to the Court's scheduling order, the dispositive motion deadline was set for April 22, 2026. Dkt. 33. On that day, Plaintiffs filed a Motion for Partial Summary Judgment (Dkt. 42) and Motion to Take Judicial Notice (Dkt. 43). Plaintiffs' motion seeks summary judgment on a variety of matters such as their negligence

claim and Defendant's affirmative defenses. Plaintiffs also seek summary judgment on their negligence per se claim based upon various building code violations—a theory that *technically* is not part of the operative complaint. More on that in a moment.

Also on April 22, 2026, however, Defendant file a Motion to Amend the scheduling order. Dkt. 44. Defendant references the pending motions as well as a then-pending 30(b)(6) deposition as justification for moving the deadlines out roughly four months. Plaintiffs oppose the motion. Dkt. 46.

### 2. Legal Standard

Under the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Ninth Circuit has held that "good cause" "primarily considers the diligence of the party seeking the amendment," and that "[i]f that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Although prejudice may provide an additional basis to deny relief, the absence of diligence alone is dispositive. *Id*.

### 3. Analysis

In Plaintiffs' estimation, this is just the latest example of Defendant's failure to follow the Court's orders and play fair. They suggest Defendant's filing for an extension on the day dispositive motions were due illustrates Defendant was not diligent. Plaintiffs also subtly suggest Defendant *forgot* about the deadline and filed this to save face and buy more time to put together a dispositive motion.

The Court understands Plaintiffs' frustration. As outlined above, there has been a pattern of delay and obstruction in this case. That said, Defendant's point is well taken.

MEMORANDUM DECISION AND ORDER - 18

With so many pending motions—two of which will materially alter the complaint—it is prudent to get everything in order before moving to substantive motion practice. Additionally, it was during this same week that Defendant obtained new counsel. Setting aside all other considerations, the Court typically allows extensions so that new counsel can get up to speed on a case.[9]

For these reasons, the Court will grant the Motion to Extend Deadlines. As part of this omnibus order, the Court will require the parties to meet and confer and determine, among other things, a new schedule moving forward.

### F.  Motion for Extension (Dkt. 52)

### 1.  *Background*

Relatedly, after Plaintiffs filed their Motion for Partial Summary Judgment, the parties agreed to extend Defendant's deadline to respond. Dkt. 50. This was primarily due to the change in defense counsel. The Court approved the agreement. Dkt. 51.

More recently, however, Defense counsel asked for a second extension to respond because discovery has taken time to review, and Plaintiffs are moving for summary judgment on five causes of action and four affirmative defenses—including two causes of action that are not alleged in the operative complaint. Dkt. 52.

Because the deadline Defendant sought to move was fast approaching, the Court expedited briefing on the matter. Dkt. 53. Plaintiffs opposed Defendant's request (Dkt. 54)

---

[9] Defendant's change in counsel is, of course, not Plaintiffs' fault and they should not be penalized. Again, however, the Court strives to resolve all cases and controversies on the merits and with the benefit of completed discover and full briefing. *See* Fed. R. Civ. P. 1.

MEMORANDUM DECISION AND ORDER - 19

and Defendant replied (Dkt. 55). With the deadline a few days away, and in light of the Court's schedule, the Court summarily granted the motion to extend and explained a decision would follow. Dkt. 56. This is that decision.

### 2. Legal Standard

Federal Rule of Civil Procedure 6(b)(1)(A) "provides that a district court may extend a deadline 'for good cause.'" *Tindall v. First Solar Inc.*, 892 F.3d 1043, 1048 (9th Cir. 2018). "[D]istrict courts normally grant these requests in the absence of bad faith or prejudice to the adverse party." *Id*. However, "a court is not required to grant a motion under Rule 6(b)(1)(A)—even where good cause is demonstrated—if the circumstances warrant a denial." *Rodriguez v. St. Luke's Hosp.*, 2025 WL 1332074, at *4 (D. Idaho May 7, 2025) (citing *Tindall*, 892 F.3d at 1048). Rather, "Rule 6 provides that the court may grant the motion for good cause, not that it must do so." *Tindall*, 892 F.3d at 1048. In addition, "[b]oth Rule 6(b) and the case authorities make clear that the showing needed to extend a pretrial deadline is more onerous the later in the game it is made." *Savage v. City of Twin Falls*, 2015 WL 12681319, at *7 (D. Idaho Jan. 20, 2015).

### 3. Analysis

As an academic exercise, the Court understands Defendant's concern about whether Plaintiffs can move for summary judgment in the first instance based upon matters not in the complaint. However, as outlined above, it is likely not entirely necessary for Plaintiffs to amend their complaint to plead an *alternate theory* when the claim itself is already properly raised. Thus, Plaintiffs motion was not improperly filed.

MEMORANDUM DECISION AND ORDER - 20

And Plaintiffs concerns about delay do not fall on deaf ears. However, the Court is concerned about capturing the full scope of the issues before ruling. It does not like to re-open discovery once closed or allow supplemental briefs to address matters that belatedly come to light.

Accordingly, it is best to get Plaintiffs' amended complaint in the case, allow Defense counsel to get up to speed on everything, complete discovery, and *then* complete briefing on this motion. The Motion is GRANTED.

## IV. CONCLUSION

Regarding the discovery motions, the Court finds Defendant has been unnecessarily obstinate in providing adequate responses to Plaintiffs' inquiries. Plaintiff was patient, tried to work with Defendant, involved the Court, and only as a last resort filed motions to compel. The Court grants both Motions, orders Defendant to comply as outlined above, and awards Plaintiffs the fees they incurred in bringing the Motions.

Plaintiffs' Motions to Amend are timely, appropriate, and appear targeted to achieving a more complete resolution of this matter. For those reasons, both will be granted. As noted, Plaintiffs shall file an Amended Complaint within three days.

As for the scheduling motions, the Court seeks to adjudicate matters as quickly and efficiently as possible. *See* Fed. R. Civ. P. 1. In light of the pending motions to amend, Defendant's change in counsel, and the Court's own docket, achieving that goal here means GRANTING Defendant's Motion to Amend the scheduling order and Motion for Extension.

Considering the Court's myriad rulings, the Parties are directed to meet and confer regarding: 1) Defendant's discovery response; 2) Plaintiffs' Amended Complaint and Defendant's answer—specifically, whether current defense counsel will represent the other entities and how discovery related to the other entities will unfold; 3) new dates and deadlines for the completion of discovery, dispositive motions, and ADR; 3) new deadlines for Plaintiffs Motion for Partial Summary Judgment.[10]

## V. ORDER

The Court HEREBY ORDERS:

1. Plaintiffs' Motion to Compel and for Attorneys' Fees (Dkt. 22) and Second Motion to Compel and for Attorneys' Fees (Dkt. 34) are GRANTED.

    a. Defendant shall respond to Plaintiffs discovery within 14 days of the date of this order.

    b. Plaintiffs shall file their bills of costs within 14 days of the date of this order. The standard deadlines for briefing will follow.

2. Plaintiffs' Motion to Amend (Dkt. 23) and Second Motion to Amend (Dkt. 35) are GRANTED. Plaintiffs shall file a single Amended Complaint that includes their negligence per se theory and all new Defendants within three days of the date of this order.

---

[10] The Court's standard practice is to address all dispositive motions at the same time. Therefore, the Court's *preference* would be to hold briefing on Plaintiffs' Motion until around the time of any other dispositive motions. That said, the parties may feel is less burdensome to brief Plaintiffs' motion now and then brief later motions in a few months once all other discovery and deadlines have passed. Again, however, regardless of what the parties decide, the Court will *likely* wait to hear all dispositive motions at the same time.

MEMORANDUM DECISION AND ORDER - 22

3.  Defendant's Motion to Amend/Correct (Dkt. 44) and Motion for Extension (Dkt. 52) are GRANTED.

4.  The Parties will provide a status update to the Court, including all deadlines moving forward, on or before July 1, 2026.

DATED: June 17, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 23